## McDERMOTT v. COUNTY COMMISSIONERS
### No. 2653
August 5, 1924.                                    227 Pac. 1014.

1. STATUTES—LEGISLATURE PROHIBITED FROM PASSING LOCAL AND SPECIAL LAWS RELATIVE TO COUNTY AND TOWNSHIP BUSINESS, THOUGH GENERAL LAW INAPPLICABLE.

> · While the legislature may pass local and special laws in some circumstances, it may not do so in any of the cases enumerated in Const. art. 4, sec. 20, relative to regulation of county and township business, though a general law would be inapplicable within section 21.

2. STATUTES—ACT AUTHORIZING COUNTY TO PAY CLAIM HELD VOID AS SPECIAL ACT REGULATING COUNTY BUSINESS.

> Stats. 1923, c. 28, authorizing and directing the county commissioners of Elko County to allow a claim in favor of plaintiff for injury and authorizing payment thereof, *held* invalid as a special law regulating county business, in violation of Const. art. 4, sec. 20, and not authorized by section 21.

See 36 Cyc. p. 1001, n. 24; p. 1002, n. 28.

APPEAL from Fourth Judicial District Court, Elko County; *J. M. McNamara*, Judge.

Action by A. J. McDermott against R. W. Anderson and others, County Commissioners of the County of Elko, and against the County of Elko. Judgment for plaintiff, and defendants appeal. **Reversed.**

*W. T. Mathews*, District Attorney, for Appellants:

Legislature shall not pass local or special laws regulating county or township business. Constitution, sec. 20, art. IV. Where applicable, all laws shall be uniform and general. Sec. 21, art. IV.

Act for relief of McDermott is special law which attempts to regulate county business and restricts regulation of such business to one person, and even directs commissioners to ignore general law governing their powers. Williams v. Bidleman, 7 Nev. 68; State v. Cal. Mng. Co., 15 Nev. 234.

Money secured from taxation must be used only for public purpose. Gibson v. Mason, 5 Nev. 283. It cannot be diverted to private use. Williams v. Bidleman, supra.

Legislature cannot direct county to pay mere gratuity, even admitting moral obligation. Donnelly on Public

Contracts, 71; Conlin v. San Francisco, 33 Pac. 753; 46 Pac. 279. 18 R. C. L. 724.

*E. P. Carville,* for Respondent:

The two constitutional provisions must be read together. General laws cannot always be framed to meet all exigencies. Without right of discrimination, relief to which people are entitled might be unnecessarily delayed. Evans v. Job, 8 Nev. 322; Quilici v. Strosnider, 34 Nev. 9.

County's moral obligation is clear. Legislature may convert moral obligation into legal demand. Williams v. Bidleman, 7 Nev. 68; 12 C. J. 829.

It will not encourage citizens to do public duty, to wit, serve as jurors, if when discharging such duty they are injured through no fault of theirs they can claim no redress. Lyons v. Board, etc., 90 Atl. 1111.

Section 20, art. IV, of constitution was borrowed from Indiana constitution. In that state it was held that legislature is exclusive judge of whether general law is applicable, or whether local or special laws are required upon subject not enumerated. Bell v. Marsh, 36 N. E. 358.

This court has passed upon questions of laws regulating county business, even in face of general law therefor. Presumption is in favor of their legality. State v. Lytton, 31 Nev. 67; Evans v. Job. supra; Hess v. Page, 7 Nev. 23; State v. District Court, 30 Nev. 225; Quilici v. Strosnider, supra.

## OPINION

By the Court, COLEMAN, J.:

This is an action to recover a judgment against the defendant in the sum of $2,632.80. Judgment was rendered in favor of the plaintiff, as prayed, from which an appeal has been taken.

The plaintiff alleges that he was duly impaneled as a juror in the trial of a criminal case in Elko County, Nevada, on the 9th day of March, 1921, and that while

he was engaged in the trial, and while confined in the jury room on the second story of the courthouse in said county, he became ill to such an extent that his mind became a blank and he was unable to proceed with the trial; that this fact was communicated to the court with a request that he be released as a juror, but that his request was denied; that while the plaintiff was sick, as aforesaid, he fell from one of the windows, sustaining a fractured skull, a fracture of his right arm and of his hip, and minor injuries; that as a result he was confined in the hospital several weeks and has been unable to perform any work since such injuries were sustained.

It is further averred that in the year 1921 the plaintiff filed claims against said defendant with the board of county commissioners of Elko County, Nevada, which were rejected and disallowed by said board. It is further alleged that the legislature of the State of Nevada passed an act for the relief of the said plaintiff, authorizing and directing the board of county commissioners of Elko County to allow a claim in favor of the plaintiff for the amount sued for and authorizing the drawing of a warrant therefor and its payment by the county treasurer of said county. Stats. 1923, p. 34. It is further averred in the complaint that on April 30, 1923, the plaintiff presented his bill, duly sworn to, in the sum of $2,632.80, to the defendants, and that they rejected the same and failed and refused to allow it.

To the complaint a demurrer was filed raising certain questions of law which, being overruled by the court and defendants electing to stand upon their demurrer, judgment was rendered in favor of the plaintiff; hence this appeal.

1, 2. Appellants contend that the act in question is a special act and hence is in contravention of sections 20 and 21, art. 4, of our constitution. Section 20 reads:

"The legislature shall not pass local or special laws in any of the following enumerated cases—That is to say: * * * Regulating county and township business. * * * "

Section 21 reads:

"In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."

As we read the brief of counsel for respondent it is conceded that the act in question is a special act, but it is said that the legislature may pass a special act when a general act cannot be made applicable to existing conditions, and that this is such a case.

It is contended that the two sections of the constitution mentioned must be read together, and construed to read as follows:

"The legislature shall not pass local or special laws regulating county and township business when a general law can be made applicable; all laws shall be general and of uniform operation throughout the state."

It is argued that, since a general law could not be made applicable to the situation presented, the legislature did not trench upon the constitutional inhibition in passing a special law.

We think all of the authorities are contrary to the contention that the two sections must be construed as insisted upon. The same contention was made in the case of State ex rel. West v. Des Moines, 96 Iowa, 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381, and flatly rejected by the court. However, we need not look elsewhere than to our own decisions for a repudiation of the contention suggested, for in Evans v. Job, 8 Nev. 322, the court repeatedly used language repugnant to such view. On page 333 of the volume mentioned the court used this language:

"Sections 20 and 21 were doubtless incorporated into our state constitution to remedy an evil into which it was supposed the territorial legislature had fallen in the practice of passing local and special laws for the benefit of *individuals* instead of enacting laws of a general nature for the benefit of the *public* welfare. These sections were intended to *prohibit* the legislature from passing any local or special law in any of the cases

*enumerated in section 20,* and to *limit* the passing of other local or special laws in all other cases where a general law would be applicable, that is to say, where a general law would be adapted to the wants of the people, suitable to the just purposes of legislation or effect the object sought to be accomplished."

Continuing, the court said:

"That it was the intention of the framers of the constitution to allow the legislature to pass some local and special laws is apparent from the general language used, 'in all other cases where a general law can be made applicable,' admitting as they here do that general laws would not be applicable in some cases. If they had intended to prohibit the passage of any local or special law they would have *left out the enumerated cases and only said,* 'the legislature shall not pass any local or special laws.' So far, we think the intention clear. But when we come to the consideration of the vital question, whether or not in any given case where a local or special law has been passed (*not enumerated in section 20*), a general law is or can be made applicable, we are liable, unless we closely observe and strictly follow the ancient landmarks of interpretation, to be cast out upon a sea of uncertainty, without sail or rudder and with no safe guide to bring us on shore."

We *italicize* the significant words to bring out the thought that while the legislature might pass local and special laws in some circumstances, it could not be done in any of the cases enumerated in section 20 of the constitution.

It is not contended that the act in question does not undertake to regulate county business. If it were, such a contention is squarely and conclusively answered by this court in the case of Williams v. Bidleman, 7 Nev. 68. Counsel for respondent endeavors to distinguish the case mentioned from the instant one by pointing out that it was one in which the legislature sought to provide for the payment of a claim asserted by a county official of a sum of money in addition to his regular salary though he assumed the office with a knowledge of the duties to

be performed and the amount of the salary fixed by law, which had been assigned to Williams, whereas, in the instant case, a moral obligation rests upon the county to make adequate provision for the injuries sustained. We agree as to the interpretation of the Williams case and concede, for the purpose of this case, that a moral obligation rests upon Elko County as contended. In both instances the suit was brought under a special statute affecting county business, and both were for the benefit of an individual, and in no way tending to promote the public interest or public welfare. The point made is, in fact, answered in the case mentioned, for in that case it was assumed that a moral obligation existed and that the legislature had the power to convert a moral obligation into a legal demand. We do not think we could do better than quote at length from the Williams case, wherein it is said:

"The manifest purpose and direct consequence of this statute is to transfer to Leffingwell a portion of the county funds of Lander County. It is further evident that the money, when so paid to him, is to be his own private property; to be held and enjoyed by him absolutely, and for his own private ends and purposes. The act is purely retrospective in its operation; not enacted to provide a salary for services to be thereafter performed, or to make compensation for benefits thereafter to accrue; but to appropriate money, either as a gratuity or donation, or in discharge of some obligation already resting upon the county or upon the state. Now the legislature had no power to appropriate to a creditor or to a donee of the state, money raised by a tax levied upon and collected from the taxpayers of Lander County alone. No such tax could be legally levied or collected, except for purposes both public and of special and peculiar interest to the inhabitants of that particular county. The fund thus raised for and dedicated to public and county uses could not be afterwards directed to public or state purposes. The taxing power cannot be enlarged by such indirection. The validity of the statute must then rest upon the assumption that it

applies the funds of Lander County in liquidation of a just or equitable claim against that county. Upon any other hypothesis it diverts such funds to a private purpose, or imposes upon one county the whole of a state burden."

The decision mentioned is, in our opinion, decisive of the instant case, and we could not affirm the judgment appealed from without reversing that opinion, which we shall not do, either from the standpoint of law or reason. See, also, Conlin v. Board of Supervisors, 114 Cal. 404, 46 Pac. 279, 33 L. R. A. 752. In this connection we may observe that authorities holding that an act authorizing the payment of a claim against a state are not in point.

It has been pointed out repeatedly that to permit local legislation of this nature invites many abuses and jeopardizes the public welfare. Though a member of the legislature may be elected from one county alone, he is a legislator for the entire state; it is his duty to safeguard the interest of the general public. However, it generally happens that, when a bill is introduced which is local in character, its fate is dependent entirely upon the attitude of the legislator from the locality affected. Such a practice "leads to improper combinations among the members, and often to crude and even vicious legislation, that would not be permitted were it to affect the whole state." Singleton v. Eureka County, 22 Nev. 98, 35 Pac. 833; State v. Boyd, 19 Nev. 44, 5 Pac. 735.

Counsel for both parties proceeded in the trial court, as well as in this court, upon the assumption that the legislature, by the act in question, made it mandatory upon the board of county commissioners to allow the claim of the respondent. Section 1 of the act provides that the board of county commissioners "be, and they are, hereby authorized to allow a claim of Andrew J. McDermott" in the sum of $2,632.80. This is the extent of the authority conferred upon the board of county commissioners. While the question is not raised, we have grave doubts if it was the intention of the legislature to do more than to confer authority upon said board to

allow the claim mentioned, if, in their discretion, they saw fit to do so. If this be true, when they disallowed the claim they had exercised the discretion imposed upon them, and their action ended the matter. If, on the other hand, the legislature intended to make it mandatory upon the board of county commissioners to allow the claim, the query arises if it was not an attempt on the part of the legislature to impose upon a legal subdivision of the state, by a special act, a liability to pay a disputed claim without the right of being heard in a court of competent jurisdiction, and a deprivation of property by a judicial determination, on the part of the legislature, without due process of law.

The judgment is reversed.