JOSEPH F. McDONALD, Petitioner, v. ELWOOD H. BEEMER, as County Clerk and Ex Officio Clerk of the Board of County Commissioners, Washoe County, Nevada, Respondent.

No. 3628

June 27, 1950.                    220 P.2d 217.

*Echeverria & Young,* of Reno, for Petitioner.

*Harold O. Taber,* District Attorney, Washoe County, of Reno, for Respondent.

## OPINION

By the Court, EATHER, J.:

This application for a writ of mandamus presents squarely for determination the constitutionality of an act of the legislature applying to Washoe County alone, and dividing that county into two commissioner districts.

■ Petitioner alleges that he is a citizen, taxpayer and legally qualified voter of Washoe County; that respondent is the county clerk and ex officio clerk of the board of county commissioners of said county and is charged with the duty of accepting and filing a declaration of candidacy from any qualified individual who desires to be a candidate for district office voted for wholly within one county, and that a declaration of candidacy for the office of county commissioner of Washoe County, Nevada, may be properly filed with respondent; that petitioner has attempted to file with respondent such declaration of candidacy, properly executed and acknowledged, together with the statutory filing fee, and complying in all respects with the requirements for such filing; that respondent refuses to accept such filing unless petitioner registers as a resident of a particular district of said county; that in addition to his interest in being a candidate, petitioner, as a taxpayer, desires to have said county properly and validly governed and to exercise his franchise in a valid election and that the matters involved are of public and general interest to the people of said county and that the determination thereof is necessary to prevent serious embarrassment in regard to the elections of said county; that the closing date for filing declarations of candidacy is rapidly drawing near (July 17, 1950), and that a prompt determination of the matter is vital to the interests of the public and the taxpayers and electors of Washoe County. That mandamus is the proper remedy under such circumstances has heretofore been held by this court. State ex rel. Fall v. Kelso, 46 Nev. 128, 208 P. 424. Respondent's answer to the petition admits all of the allegations

thereof, but recites that respondent is prohibited from accepting petitioner's declaration of candidacy for the office of county commissioner, absent the statement therein that the petitioner is a qualified elector and resident of the district for which he is a candidate, by the provisions of chap. 30, Statutes of Nevada, 1933, p. 25, entitled "An Act to establish commissioner districts in the county of Washoe, and providing for the election of members of the board of county commissioners thereof," and reading as follows:

"Section 1. Within ninety days after the passage and approval of this act the board of county commissioners of Washoe County *shall divide said county into two commissioner districts,* with the following boundaries for each of said commissioner districts:

"(a) All that portion of Washoe County known as the voting precincts of Reno and Verdi, and all that portion of the county of Washoe south of the city of Reno shall be known as commissioner district No. 1.

"(b) All the remaining portion of Washoe County not included within the boundaries of district No. 1 as described in subdivision (a) of this section, shall be known as commissioner district No. 2.

"Sec. 2. At the general election in 1934 and at each general election thereafter there shall be elected in district 2 a commissioner who shall serve for two years. At the general election in 1934 and at each general election thereafter there shall be elected in district 1 a commissioner who shall serve for four years.

"Sec. 3. The board of county commissioners of said Washoe County shall establish election precincts within such county in such manner that each and every election precinct shall be wholly within some one of said commissioner districts.

"Sec. 4. Candidates for the office of county commissioner for the respective districts *shall be qualified electors and residents of the districts for which they are candidates.*" (Italics supplied.)

Petitioner's reply asserts that this act is unconstitutional and reiterates his prayer for the writ commanding respondent to accept petitioner's declaration of candidacy without the requirement insisted upon by respondent.

Our attention is first directed to "An Act to create a Board of County Commissioners in the several counties of this State and to define their Duties and Powers," Statutes 1865, p. 257, as amended, being sections 1935 et seq. N.C.L., which act provides for the election of county commissioners by the qualified electors of each county and definitely requires that such commissioners be themselves qualified electors of their respective counties. It is the contention of petitioner that this general act must govern the matter of the election of county commissioners for Washoe County unless the commissioners, acting under the authority and in the manner provided in a later general act of the legislature proceed to divide the county into commissioner districts.

Such later general act is that enacted by Statutes 1893, p. 33, being "An Act to define the manner of electing County Commissioners," sections 1 and 4 of which, being respectively sections 1964 and 1967, N.C.L.1929, read as follows:

"Commissioner Districts. § 1. Whenever twenty per cent or more of the qualified electors of any county in this state shall petition the board of county commissioners of their county to that effect, it shall be the duty of the county commissioners of such county, on or before the first Monday in July preceding any general election, to divide the county into three districts to be known as 'commissioner districts.' Such division shall be made to conform to the established boundaries of election precincts or wards, and each and every election precinct or ward shall be wholly within one of the commissioner districts herein provided for. Each commissioner district shall embrace, as near as may be, one-third of the voting population of the county, to be determined by

the vote cast at the last general election, and shall consist of adjoining precincts; provided, that in case not more than three election precincts or wards exist in the county, then each election precinct or ward shall constitute a commissioner district."

"Electors. § 4. County commissioners shall be elected by the qualified electors of the county wherein they reside as other county officers are now elected."

■ It first becomes necessary to lay the 1933 act alongside the constitutional provisions having to do with the legislative powers. Section 20 of article IV of the state constitution, N.C.L., sec. 71, reads in part: "Legislative Powers Restricted. § 20. The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * regulating county and township business; regulating the election of county and township officers * * *."

Section 21 of said article being sec. 72, N.C.L., reads as follows: "Laws General And Uniform. § 21. In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."

Section 25 of said article, being sec. 76, N.C.L., reads as follows: "County Government. § 25. The legislature shall establish a system of county and township government, which shall be uniform throughout the state."

Section 26 of said article, being section 77, N.C.L., reads in part as follows: "County Commissioners. § 26. The legislature shall provide by law for the election of a board of county commissioners in each county * * *."

It is first apparent that, as a general rule, if a statute be either special or local or both and comes within one or more of the cases enumerated under section 20 of article IV of the constitution, such statute is unconstitutional; and further, if the statute be special or local but does not come within any of the cases enumerated in section 20, its constitutionality depends upon whether a general law

can be made applicable. Washoe County Water Conservation District v. Beemer, 56 Nev. 104, 116, 45 P.2d 779. See also McDermott v. County Commissioners, 48 Nev. 93, 227 P. 1014, with reference to special laws "regulating county and township business," being one of the additional enumerated cases recited in section 20 of article IV of the constitution. It is not pretended or claimed that the 1933 act applies to any other than Washoe County, or may be defended under the rules of permissible classification as discussed in State v. Donovan, 20 Nev. 75, 15 P. 783, and the cases therein referred to.

■ In Singleton v. Eureka County, 22 Nev. 91, 35 P. 833, the legislature, by Statutes 1893, p. 80, authorized the sheriff of Eureka County to appoint a night watchman at a fixed salary payable by the county, being an amendment of the act of 1869 authorizing the county commissioners of Eureka County to appoint one night watchman for the town of Eureka. In that case, 22 Nev. at page 101, 35 P. at page 836, BIGELOW, J., in concurring said: "There are several other constitutional provisions with which the act seems to conflict, but there is one with which the conflict is clear, and that is that no local or special law shall be passed regulating county and township business. That the law is local to Eureka County cannot be denied, and to some extent it certainly regulates the business of that county. 'County business' may be defined as covering almost everything that concerns the administration of the county government. It includes the election or appointment of its officers and employes, the amount of their compensation, and how, when, and from what fund it is to be paid. This act directs how the watchman is to be appointed, upon which subject there have been three different regulations. It regulates its business by making it responsible for the watchman's salary, which otherwise it would not be. It directs that the county's money shall be taken from its treasury, and paid to one who otherwise would have no claim upon it. It fixes the amount which the county

must pay, and by reference to the manner of payment of the salaries of other county officers, it directs how, when, and from what fund the money is to be paid. This is a regulation of county business, within the meaning of the constitution, concerning which local laws are forbidden."

■■ The principal opinion written by MURPHY, C. J., in which BELKNAP, J., concurred, stated that "* * * If the act * * * regulating the internal affairs of a county, excludes from its operation counties or localities similarly situated, and in like relation to the legislative purpose, then the classification is not uniform, and is faulty as being local and special." Turning again to Judge BIGELOW'S concurring opinion, we find attention drawn to the evils of legislation affecting but one locality —the fact that the same is invariably referred to the local members and passed without scrutiny from the other representatives and without any feeling of responsibility on their part, thus often leading to improper combinations among the members and even to vicious legislation that would not be permitted were it to affect the whole state. Judge BIGELOW then points out:

"Among a number of provisions in the constitution directed against this evil is the one requiring the legislature to establish a system of county and township government which shall be uniform throughout the state. To a certain extent the system to be adopted was left to the discretion of the legislative body, but the requirement is absolute that, whatever the system may be, it must be uniform; indicating that this uniformity was a more important consideration with the constitution makers than the plan to be adopted. These limitations upon the power of the legislature should be executed by the courts in the same spirit in which they were adopted, and so as to prevent legislation sought to be guarded against.

"A system of government consists of the powers, duties, and obligations placed upon the political organization, and the scheme of officers charged with their

administration. If the system is to be uniform, it is necessary that these powers, duties, and obligations shall be the same in each county; that the same officers shall be provided, and the responsibilities of government be divided among them in the same manner; otherwise the system is not uniform, for, as here used, the word means that the county governments to be established are in all essential particulars to be alike."

It is clear to the court that the 1933 act hereinabove quoted comes directly within the prohibition of each and all of sections 20, 21, 25 and 26 of article IV of the constitution and that in the absence of procedure in accordance with the act of 1893, p. 33, regulating the manner in which counties may be divided into commissioner districts, State ex rel. Kearns v. Streshley, 46 Nev. 199, 209 P. 712; State ex rel. Fall v. Kelso, 46 Nev. 128, 208 P. 424, the manner of electing county commissioners for Washoe County is governed by the provisions of the act of 1865, p. 257, as amended, being sections 1935 et seq., N.C.L.

Let the peremptory writ as prayed for issue. Such writ shall be effective only in the absence of the establishment of commissioner districts in accordance with the act of 1893, p. 33, being sections 1964 et seq., N.C.L. No costs awarded.

HORSEY, C. J., and BADT, J., concur.